**H1 LAW GROUP**
Jill Garcia, NV Bar No. 7805
jill@h1lawgroup.com
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone  702-608-3720
Fax      702-703-1063

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA GIMMELLIE, an individual, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| SOMERPOINTE RESORTS, LLC, a Nevada Limited Liability Company; AARON LEWIS, an individual; JUNID SANCHEZ, an individual; DOES I through X, inclusive; and ROE BUSINESS ENTITIES, I through X, inclusive, | |
| Defendants. | |

Plaintiff Angela Gimmellie ("Plaintiff" or "Gimmellie"), by and through her undersigned counsel, files this Complaint against Defendants Somerpointe Resorts, LLC ("Somerpointe"), Aaron Lewis ("Lewis"), and Junid Sanchez ("Sanchez") (together, the "Defendants"), and states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Angela Gimmellie is an individual residing in Las Vegas, Nevada, and a qualified/eligible employee of Defendant Somerpointe within the meaning of the Family Medical Leave Act (29 U.S.C. § 2601 *et seq*.) ("FMLA").

2.  Defendant Somerpointe is and was at all relevant times hereto, a limited liability company organized under the laws of the State of Nevada, with a principal place of business located in Las Vegas, Nevada.

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

3.      Somerpointe employs 50 or more employees and is an "employer" within the meaning of FMLA.

4.      Defendant Aaron Lewis, an individual residing in Nevada, is Vice President of Operations at Somerpointe. At all times mentioned herein, Mr. Lewis was responsible for the acts described while acting in his capacity as a supervisor of Plaintiff and executive at Somerpointe.

5.      Defendant Junid Sanchez, an individual residing in Las Vegas, Nevada, is the Human Resources Director at Somerpointe. At all times mentioned herein, Ms. Sanchez was responsible for the acts described while acting in her capacity as Human Resources Director and executive at Somerpointe.

6.      All of the acts and/or failures to act alleged herein were duly performed by and/or are attributable to Defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by Defendants.

7.      The names and capacities, whether individual, corporate, associate or otherwise, of Defendants and/or their alter egos sued herein as DOES I through X, and ROE Business Entities I through X, inclusive, are presently unknown, and Plaintiff therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names of any and all Doe and Roe defendants as alleged herein and/or after their true names and capacities are ascertained.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Ms. Gimmellie is making a claim under the FMLA.

9.      This Court has supplemental jurisdiction over Ms. Gimmellie's state law claim under 28 U.S.C. § 1367 because that claim forms the same case and controversy as her FMLA claim.

10.     Venue is proper in this district because one or more of the Defendants reside within this district and because the actions of Defendants at issue took place within this district.

/ / /

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

## **GENERAL ALLEGATIONS**

11.    Ms. Gimmellie incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

12.    Ms. Gimmellie has qualified for leave under the FMLA for at least three years preceding her termination from employment. Somerpointe was aware of the extent and nature of Ms. Gimmellie's reasons for leave under the FMLA.

13.    As described below, Somerpointe failed to comply with its obligations under the FMLA by refusing to return Ms. Gimmellie to her position following her use of FMLA leave and then wrongfully "eliminating" her position with the family of companies for whom she worked for over fourteen years.

### *Ms. Gimmellie is an Outstanding Somerpointe Employee*

14.    Ms. Gimmellie is a fourteen-year employee of the ASNY Family of Companies.

15.    She was originally hired by the Artie Spector Company ("ASC") in 2006.

16.    In 2009, Somerpointe (formerly known as ASNY Company) promoted her to the position of Resort Marketing Manager.

17.    Then in 2013, Ms. Gimmellie received a promotion to Director of Project Management.

18.    In August of 2019, she was further promoted to Director of In-House Marketing and Director of Project Management, with direct responsibility of two additional departments.

19.    During her tenure with Somerpointe, Ms. Gimmellie was heavily involved in new business development, branding, and project management, including overseeing two Marketing Coordinators.

20.    Ms. Gimmellie was a successful employee, some of her most notable achievements being the creation of the Mini-Vac Program (both online and point of sale) that is, still to this day, the current source of the tour flow, representing millions of dollars of revenue to the company; management of the sales floor portion of the 2016 Tahiti Village $10,000,000 remodel project; and management of the 2012-2013 portfolio wide customer film that not only

won a gold ARDA for Customer Impact Film of the Year, but was also widely utilized for ads, commercials, emails, social media, and sales presentations.

***Ms. Gimmellie Has Never Been Written***
***Up or Subject to Disciplinary Action***

21.   Ms. Gimmellie had an excellent performance record with Somerpointe.

22.   Aaron Lewis, Vice President of Operations at Somerpointe and Ms. Gimmellie's direct supervisor, never expressed significant concerns with Ms. Gimmellie's performance prior to termination.

23.   Further, none of Ms. Gimmellie's other prior supervisors ever expressed significant concerns with Ms. Gimmellie's performance at Somerpointe or its related family of companies.

24.   All of Ms. Gimmellie's performance evaluations have been satisfactory, so much so that Ms. Gimmellie has been given a raise on an annual basis.

***Mr. Lewis Makes It Known That***
***Motherhood Will Impact Ms. Gimmellie's***
***Career with Somerpointe.***

25.   In 2016, Ms. Gimmellie began to report to Mr. Lewis.

26.   During an introductory meeting with Mr. Lewis, Mr. Lewis asked Ms. Gimmellie if she planned to have children.

27.   Taken aback by the nature of his question, particularly where Ms. Gimmellie barely knew Mr. Lewis, and feeling extremely uncomfortable, Ms. Gimmellie responded by stating that she was not sure and asking, "Why?"

28.   Mr. Lewis responded by stating that he was just curious about her family plans, as it would dictate how she would move around the company.

29.   Given the highly inappropriate nature of this question, Ms. Gimmellie made a report to Somerpointe and Vice President of Human Resources Eva Anaya.

30.   Ms. Anaya later reported back that this inappropriate comment had been addressed with Mr. Lewis and would not happen again.

31.   This interaction set the tone for Ms. Gimmellie's work under Mr. Lewis.

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

*Somerpointe Approves Ms. Gimmellie's FMLA Leave for the Placement of Her Son*

32.     Following a long struggle with infertility, in late 2019, Ms. Gimmellie made the decision to pursue an alternate route to motherhood – foster care and adoption.

33.     In or about January 2020, Ms. Gimmellie advised Somerpointe that she was beginning the foster care licensing process, and therefore was not going to be available one weekday evening for immediate response to team member issues.

34.     Later, as she neared the end of the foster care licensing processing, she advised of her desire to discuss her FMLA leave in preparation for the placement of her baby.

35.     Junid Sanchez is the Human Resources Director at Somerpointe.

36.     Initially, Somerpointe and Ms. Sanchez did not understand their FMLA obligations, or that Ms. Gimmellie was eligible for FMLA leave for the placement of her foster child.

37.     This was frustrating; nevertheless, Ms. Gimmellie worked diligently with Ms. Sanchez to resolve this issue.

38.     Eventually, Somerpointe, through Ms. Sanchez, approved Ms. Gimmellie's use of her FMLA leave.

39.     Given Somerpointe's and Mr. Lewis's prior conduct, Ms. Gimmellie expressed her concerns to Ms. Sanchez that she was worried Mr. Lewis would push her out if she used her FMLA leave time.

40.     Ms. Gimmellie was repeatedly reassured by Ms. Sanchez that the leave time was hers to use, that she should enjoy the bonding time with her new baby, and that her position would be protected while she was on leave.

/ / /

/ / /

/ / /

/ / /

*Ms. Gimmellie Exercises Her Right to Use*
*FMLA Leave Following the Placement of*
*Her Son*

41.     Ms. Sanchez, after discussing leave dates with Mr. Lewis, sent FMLA paperwork to Ms. Gimmellie; told her that May 14 to June 1, 2020 needed to be continuous leave; and required Ms. Gimmellie to deplete her accrued paid time off before she transitioned to unpaid leave.

42.     Based upon Ms. Sanchez's prior assurances that Ms. Gimmellie could use her FMLA leave and her position would be protected, Ms. Gimmellie took continuous leave from May 14, 2020 through June 1, 2020.

43.     Ms. Gimmellie was ready to return to work on June 1, 2020, as she preferred to keep her remaining leave time available for use with anticipated appointments for her newborn son.

44.     However, Somerpointe, through Ms. Sanchez and Mr. Lewis, insisted Ms. Gimmellie take some additional time, to which Ms. Gimmellie agreed.

45.     After an additional week of leave, she returned to work on June 8, 2020.

*Somerpointe, and Particularly Mr. Lewis,*
*Refuse to Genuinely Return Ms.*
*Gimmellie to Her Director Position*

46.     Upon her return to work, Ms. Gimmellie was not returned to her Director position.

47.     Instead, Ms. Gimmellie was assigned less meaningful responsibilities.

48.     Once in charge of negotiating agreements, key initiatives, website development, and managing relationships, Mr. Lewis now excluded Ms. Gimmellie from key initiatives and meetings in which she had previously been a key participant and tasked her with low-level responsibilities such as bar and spa promotions, retail emails, and resort signage, incommensurate with her Director position and high-level skillset (developed over fourteen years at the Somerpointe family of companies).

/ / /

/ / /

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

***Ms. Gimmellie Expresses Concerns about
Mr. Lewis' Failure to Return Her to Her
Director Position***

49.     Ms. Gimmellie initially attempted to be patient with her limited position, believing the transition to reassuming her full responsibilities was just taking some additional time.

50.     When it became obvious that Mr. Lewis had no intention of returning her to her full position, Ms. Gimmellie approached Mr. Lewis to discuss these concerns.

51.     Notably, Mr. Lewis admitted he was "purposely focusing" Ms. Gimmellie.

52.     In other words, Mr. Lewis relinquished Ms. Gimmellie's Director position responsibilities while she was on leave and permanently assigned those responsibilities to others.

53.     It appears that Ms. Gimmellie's decision to be honest in her self-evaluation and express these concerns was the final straw for Mr. Lewis.

54.     He made the decision to terminate her employment because she exercised her right to use FMLA leave.

***Despite Her Stellar Performance, Ms.
Gimmellie Is Shockingly Terminated for
Using Her FMLA Leave***

55.     On November 19, 2020, when Ms. Gimmellie arrived at work to attend a weekly sales and marketing meeting, unbeknownst to her, the meeting was cancelled, and she was requested to report to Ms. Sanchez's office.

56.     Mr. Lewis was waiting there as well.

57.     Shockingly, and despite her more than fourteen years of excellent service to Somerpointe, Ms. Gimmellie was told her position was being eliminated.

58.     Mr. Lewis and Ms. Sanchez demanded that she immediately delete her email from her cell phone and threatened to wipe her cell phone clean, including all pictures of her newborn baby, if she did not comply.

<div style="margin-left:auto; text-align:left;">

**H1 LAW GROUP**
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

</div>

## CAUSES OF ACTION

## COUNT I – Violations of the FMLA

## (All Defendants)

59.     Ms. Gimmellie incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

60.     Under the FMLA, Ms. Gimmellie was "entitled to a total of 12 workweeks of leave during any 12-month period" for the placement of her new baby. 29 U.S.C. § 2612(a)(1).

61.     Further, under 29 U.S.C. § 2614(a)(1):

> [A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—
>
> > (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
> >
> > (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

62.     Two claims for recovery are available under the FMLA: an interference/denial of rights claim and a discrimination or retaliation claim.

63.     For the first claim, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1).

64.     For the second claim, an employer is further prohibited from discriminating or retaliating against an employee for having exercised or attempted to exercise any FMLA right. *Id.* § 2615(a)(2).

65.     During Ms. Gimmellie's employment with Somerpointe, Somerpointe, by and through its agents and employees, including Mr. Lewis and Ms. Sanchez, interfered with, and discriminated against Ms. Gimmellie in the terms, conditions, and privileges of employment in various ways including violations of the FMLA.

66.     Ms. Gimmellie was an eligible employee to take FMLA leave for the placement of her foster child within one year of the placement. Ms. Gimmellie's son was placed with her on or about May 9, 2020.

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

67.     Defendants' violated the FMLA when they set out to interfere with her attempt to exercise her right to leave initially by stating that she was not a "real" mother. Initially, they failed to recognize she was entitled to this leave for the placement of a foster child and made it very difficult for Ms. Gimmellie to be deemed eligible for FMLA leave.

68.     Ms. Gimmellie gave appropriate notice of her need to be absent from work and notified Somerpointe at least 30 days before the leave was to begin and/or as soon as practicable after she learned when the placement was anticipated to occur.

69.     Defendants' unlawful discrimination against Ms. Gimmellie consisted of treating Ms. Gimmellie differently based upon her use of leave authorized by the FMLA related to her employment.

70.     Defendants interfered with Ms. Gimmellie's rights to take unpaid leave from work in violation of the FMLA.

71.     Defendants further violated both 29 U.S.C. § 2615(a)(1) and (a)(2) when they failed to genuinely restore Ms. Gimmellie to her Director position, and later eliminated her position and terminated her.

72.     Ms. Gimmellie's exercise of her right to take unpaid leave from work as authorized by the FMLA was either the sole or a motivating factor for Defendants' decision to discharge Ms. Gimmellie.

73.     Defendants further retaliated against Ms. Gimmellie for using her leave by terminating her employment.

74.     Mr. Lewis and Ms. Sanchez are individually liable for violating Ms. Gimmellie's rights under the FMLA.

75.     Mr. Lewis is individually liable for the FMLA violations described above because, upon information and belief, he is the Vice President of Operations at Somerpointe, he was Ms. Gimmellie's direct supervisor who managed her day-to-day duties and operations, he (along with Ms. Sanchez) controlled Ms. Gimmellie's ability to return to work and under what conditions, he refused to let Ms. Gimmellie return to work in a same or similar position, and he (in concert with Ms. Sanchez) eliminated her position and terminated Ms. Gimmellie.

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

Somerpointe failed to adequately supervise, control, discipline or otherwise penalize the conduct, acts and failures of its employees and thereby ratified these wrongful actions.

76.     Ms. Sanchez is also individually liable for the FMLA violations described above because, upon information and belief, she is the Human Resources Director at Somerpointe, she reviewed Ms. Gimmellie's FMLA paperwork and determined its adequacy, she (along with Mr. Lewis) controlled Ms. Gimmellie's ability to return to work and under what conditions, she sent or otherwise supervised nearly every communication with Ms. Gimmellie regarding her leave and employment, and she (in concert with Mr. Lewis) eliminated Ms. Gimmellie's position and terminated Ms. Gimmellie. Somerpointe failed to adequately supervise, control, discipline or otherwise penalize the conduct, acts and failures of its employees and thereby ratified these wrongful actions.

77.     Ms. Gimmellie has sustained extensive economic loss as a result of her wrongful termination.

78.     Given Defendants' retaliation and wrongful termination, Ms. Gimmellie has suffered damages including lost wages (including back pay and front pay), lost employment, lost benefits, lost earning capacity, lost opportunities, liquidated damages, emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life in an amount to be proven at trial.

79.     Defendants intentionally, voluntarily, deliberately, and willfully discharged Ms. Gimmellie, and such actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Gimmellie's protected rights.

80.     Due to Defendants' violations of the FMLA, Ms. Gimmellie was forced to bring this action and is entitled to recover her attorney's fees and costs.

81.     Further, Defendants violated the FMLA with an intent to injure Ms. Gimmellie or with a conscious disregard of her rights.

82.     Defendants' violations of the FMLA constitute despicable conduct that subjected Ms. Gimmellie to cruel and unjust hardship with a conscious disregard for her rights.

83.     Ms. Gimmellie requests relief as described in the Prayer for Relief below.

**COUNT II – Intentional Infliction of Emotional Distress**

**(All Defendants)**

84.     Ms. Gimmellie incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

85.     Defendants' conduct was extreme and outrageous in asking Ms. Gimmellie her future reproductive decisions and indicating it would impact her career.

86.     Defendants' conduct was further extreme and outrageous when they refused to meaningfully return Ms. Gimmellie to her position following her use of FMLA leave, slowly cutting her out of decisions and direction of the very department she ran, and then wrongfully terminating Ms. Gimmellie's position under the pretext of a position elimination.

87.     Defendants intended to cause emotional distress to Ms. Gimmellie or acted with reckless disregard of causing her emotional distress.

88.     Ms. Gimmellie suffered severe or extreme emotional distress as a result of Defendants' conduct including, but not limited to, severe or extreme emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life.

89.     Defendants violated the FMLA with an intent to injure Ms. Gimmellie or with a conscious disregard of her rights or safety.

90.     Defendants' acts also constitute despicable conduct that subjected Ms. Gimmellie to cruel and unjust hardship with a conscious disregard of her rights.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.     For damages in excess of $50,000.00, the full amount to be determined at trial;

2.     For the recovery of lost income (back and front pay), including loss of all employment benefits;

3.     For liquidated damages;

H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

4.     For general and special damages in amount according to proof under the FMLA and applicable Nevada law;

5.     For punitive damages in an amount to be determined at trial;

6.     For attorneys' fees and costs as may be recoverable in connection with this suit; and,

7.     For such other and further relief as this court deems just and equitable.

Dated this 9th day of February 2021.

H1 LAW GROUP

Jill Garcia, NV Bar No. 7805
jill@h1lawgroup.com
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074

*Attorneys for Plaintiff*